United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUSTEES OF THE U.A. LOCAL 38 DEFINED BENEFIT PENSION PLAN,<br><br>                  Plaintiff,<br><br>          vs.<br><br>TRUSTEES OF THE PLUMBERS AND PIPE FITTERS NATIONAL PENSION FUND,<br><br>                  Defendant. | Case No.: 15-cv-04703-YGR<br><br>**ORDER ON CROSS PETITIONS**<br><br>Re: Dkt. Nos. 1, 17 |

This dispute originally came before the Court in a declaratory judgment action filed by plaintiff Trustees of the U.A. Local 38 Defined Benefit Pension Plan ("Local 38"), requesting that the Court declare whether ERISA or the common law of contracts applied to the parties' ongoing arbitration dispute. *Trustees of the U.A. Local 38 Defined Benefit Pension Plan v. Trustees of the Plumbers Pipe Fitters National Pension Fund*, Case No. 13-cv-5528-YGR (the "Related Case"). The Court found that the Federal Arbitration Act ("FAA") required the choice of law issue to be decided by the arbitrator and dismissed Local 38's declaratory action. (Related Case, Dkt. No.46.) Local 38 appealed and sought a stay of arbitration pending appeal, which was denied by both this Court and the Ninth Circuit. The arbitration proceeded, and on April 6, 2015, the arbitrator issued his decision on liability finding that Local 38 must pay defendant Trustees of the Plumbers and Pipe Fitters National Pension Fund ("NPF") full-rate reciprocity (the "Liability Award"). Then, on August 13, 2015 the arbitrator issued a damages decision, ordering Local 38 to reciprocate certain employer contributions to NPF (the "Damages Award").

United States District Court
Northern District of California

Local 38 filed a petition to vacate the Damages Award (Dkt. No. 1) and NPF filed a cross petition to confirm the Liability and Damages Awards (Dkt. No. 17).  Having carefully considered the papers submitted, and for the reasons set forth below, the Court **DENIES** the petition to vacate, **GRANTS** the petition to confirm, and **CONFIRMS** the Liability and Damages Awards.  None of the bases for vacatur proffered by Local 38 satisfy any of the grounds specified in 9 U.S.C. § 10(a) for vacating an arbitration award.  The standard is high and Local 38 has not met its burden.

## I.   BACKGROUND

Plaintiff Local 38 and defendant NPF are both signatories to the United Association Pension Reciprocal Agreement (the "Agreement").  (Dkt. No. 1-1, "Baker Decl.," Exh. 4.)  By way of background and summary, the Agreement's purpose is to facilitate the transfer, *i.e.* reciprocation, of funds when members of one local union visit and work in the territory of another local union.  In such cases, the traveling member's employer makes pension contributions into the visited local's pension fund.  The Agreement then requires reciprocity of those "employer contributions" from the visited fund to the member's home fund.

The instant dispute concerns whether Local 38 was reciprocating to NPF all of the contributions it received on behalf of travelers whose home fund was NPF, as NPF contends is required under the Agreement.  On January 31, 2007, NPF first demanded "full reciprocity for NPF's Travelers" from Local 38.  (Baker Decl., Exh. 23.)  NPF sent dozens of similar demand letters to Local 38 throughout the ensuing years.  Then in 2013 the parties submitted their ongoing dispute to a reciprocity coordinator in attempt to resolve the allegedly deficient contributions, pursuant to the Agreement.  NPF's demand through the reciprocity coordinator included approximately $100,000 in full-rate reciprocity contributions, as well as an additional $100,000 in Pension Protection Act ("PPA") contributions.  The instant dispute focuses on the latter category, or whether PPA contributions are "employer contributions" within the meaning of the Agreement.

The reciprocity coordinator process proved unsuccessful and NPF initiated arbitration as set forth in the Agreement.  On a November 2013 conference call with the arbitrator, the parties discovered they disagreed as to whether ERISA or the law of contracts should apply to the arbitrated

2

United States District Court
Northern District of California

1   claims.  The arbitrator directed Local 38 to bring a declaratory judgment action in federal court to

2   determine which body of law would apply.

3             **A.  Related Case Proceedings**

4         On November 27, 2013, Local 38 filed a declaratory action requesting this Court "guide the

5   Arbitrator in resolving the dispute between the parties."  (Related Case, Dkt. No. 1 ¶ 44.)

6   Specifically, Local 38 sought the Court's determination of whether ERISA or the law of contracts

7   should apply in the arbitration.  NPF moved to dismiss on subject matter jurisdiction grounds.  The

8   Court ultimately dismissed the declaratory judgment action, finding that the Agreement and the FAA

9   precluded the Court from entertaining Local 38's request.  (Related Case, Dkt. No. 46.)

10        The Agreement gave the arbitrator "the authority to resolve [the underlying] dispute in total,

11  which includes determining what law applies as a predicate determination for the ultimate resolution."

12  (*Id*. at 5:3-4.)  Regardless of whether the arbitrator offered to cede this authority and allow the Court

13  to decide the issue, the Court found that NPF did not agree thereto.  The parties properly invoked the

14  arbitrator's authority to resolve their dispute and such authority cannot be unilaterally transferred to

15  the federal courts.  Accepting Local 38's invitation would contravene the Agreement and purposes of

16  the FAA.  Thus, the Court declined to intervene in an ongoing arbitration on a matter directly within

17  the purview of the arbitrator's authority:

18                  For this Court to entertain questions properly before an arbitrator in

19                  advance of any final arbitration decisions would work an end-run
    around the [FAA's] limited and deferential standard of judicial review

20                  for final arbitral awards.

21  (*Id*. at 6:12-15.)

22        Plaintiffs thereafter appealed this Court's decision to the Ninth Circuit Court of Appeals (the

23  "Ninth Circuit Appeal") and took the position that the arbitration should be postponed pending

24  resolution of their appeal.  (*See* Baker Decl., Exh. 16.)  NPF disagreed, as did the arbitrator – although

25  he did acknowledge that he would honor any court-ordered stay.  (*See id*., Exhs. 7, 14-15.)  Plaintiffs

26  then requested that this Court order a stay of the arbitration pending the Ninth Circuit Appeal.

27  (Related Case, Dkt. No. 50.)  Both this Court and the Ninth Circuit rejected Local 38's bids for a stay.

28  (*Id*. Dkt. No. 54; Dkt. No. 17-1, "Malone Decl.," Exh. 3.)  The Ninth Circuit Appeal was fully briefed

United States District Court
Northern District of California

1   as of April 6, 2015.  On October 21, 2015, NPF moved to dismiss the appeal as moot, and the briefing

2   on NPF's motion to dismiss is likewise complete.

3          **B.   Arbitration Proceedings**

4        In December 2014, following Local 38's unsuccessful attempts at a stay, the arbitration

5   proceeded with briefing on the choice of law issue.  On January 5, 2015, the arbitrator ruled that

6   contract law – not ERISA – should apply to the underlying reciprocity dispute.  (Baker Decl., Exh.

7   21.)  The arbitrator concluded that "ordinary contract law and interpretation principles would apply to

8   the claim here."  (*Id.*)  On January 13, 2015, the first day of the evidentiary proceeding, the parties

9   stipulated to bifurcating the liability and damages portions of the proceedings as follows:

10          The parties have stipulated that if – and I underline that – there is any

11          liability found, that the amounts due would be remanded to the parties
            but that I would retain jurisdiction in the event the parties cannot agree

12          thereon.

13  (Malone Decl., Exh. 7 at 17.)  The arbitrator then presided over a two-day evidentiary proceeding.

14       On April 6, 2015, the arbitrator made a liability determination in favor of NPF, requiring

15  Local 38 to "pay for travelers covered by the NPF pension fund the full amounts of employer pension

16  contributions made on their behalf while working in Local 38's jurisdiction."  (Liability Award, Baker

17  Decl., Exh. 35 at 20.)  The arbitrator further held that the doctrine of unclean hands did not apply to

18  NPF's claims because, if NPF had unclean hands, then so did Local 38.  (*Id.* at 14-16.)  The arbitrator

19  also rejected Local 38's statute of limitations defense, finding that no time limit applied to NPF's

20  claims, and even if one did, it had been equitably tolled by NPF's ongoing engagement in the

21  Agreement's dispute resolution process.  (*Id.* at 17-20.)  Based thereon, and pursuant to the parties'

22  stipulation to bifurcate proceedings, the arbitrator remanded the issue of damages to the parties.  (*Id.*)

23       The parties returned to the arbitrator when they were unable to resolve whether Local 38 was

24  obligated to reciprocate PPA contributions.  Following an exchange of briefs on the matter, the

25  arbitrator again ruled in favor of NPF, finding that PPA contributions are "employer contributions"

26  and must be reciprocated under the Agreement.  (Damages Award, Baker Decl., Exh. 1.)  The

27  arbitrator ordered Local 38 to pay more than $200,000 in PPA contributions to NPF.

28

Local 38 timely filed a petition to vacate the Damages Award pursuant to the FAA.[1]  NPF then filed its counter petition to confirm both the Liability Award and the Damages Award pursuant to the FAA and the California Arbitration Act ("CAA").[2]

## II. ERISA PREEMPTION OF NPF'S STATE LAW COUNTER PETITION

Local 38 puts forth a perfunctory argument that ERISA preempts NPF's state law remedy to confirm the Liability and Damages Awards under the CAA.[3]  Local 38 summarily contends that "the Supreme Court held that ERISA pre-empt[s] virtually all state law remedies," citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987).  (Dkt. No. 27 at 10:27-28.)  Noticeably absent from Local 38's argument is any discussion of the Supreme Court's two-part test to determine whether a claim falls within the scope of ERISA section 502(a), such that is preempted by ERISA, as announced in *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 210 (2004).  Under *Davila*, state law claims are preempted by

---

[1] NPF contends that any arguments raised by Local 38 with respect to the Liability Award are waived as untimely insofar as Local 38 failed to file a petition to vacate within three months following the Liability Award.  *See* 9 U.S.C. § 12 (petition to vacate must be served "within three months after the award is filed or delivered").  However, the Court need not reach this issue to resolve the instant petitions.  As an initial matter, NPF has not clearly articulated which of Local 38's arguments is time-barred.  Although NPF attacks specific affirmative defenses Local 38 raised in opposition to its counter petition as time-barred, NPF does not explain how these grounds are sufficiently distinct from grounds raised in Local 38's opening petition such that some are time-barred while others are not.  For example, NPF contends that Local 38's argument that "the arbitrator acted in excess of his powers by ruling that state law governed the parties dispute" is time-barred because it concerns the choice of law determination (part of the Liability Award), but does not make the same attack on Local 38's similar argument that "the arbitrator exceeded his powers by ignoring the parties' agreement to adjudicate the choice of law question in federal court."  In that regard, NPF's inconsistent position is not persuasive.  More importantly, the Court finds all of Local 38's arguments – timely or not – to be without merit.  NPF's waiver argument, therefore, is moot.

[2] NPF invokes the CAA because it allows confirmation of both the Liability Award and Damages Award.  Cal.Code.Civ.P. § 1288 (providing a four-year window in which a petition to confirm must be filed).  This procedural mechanism to confirm the Liability Award does not affect the Court's analysis.  The FAA and CAA provide for vacatur of an arbitration award under similar circumstances, and therefore, the Court may consider federal authority interpreting the FAA in adjudicating the cross petition under the CAA.  *Reed v. Mutual Svc. Corp.*, 106 Cal.App.4th 1359, n. 4 (2003).

[3] Local 38 uses an introductory sentence and a quote to argue that ERISA controls the instant dispute and then states that the Court lacks "supplemental jurisdiction."  (Dkt. No. 27 at 10:23-11:6.)  As Local 38 does not challenge jurisdiction generally, the Court construes the argument to take issue with NPF's articulation of jurisdiction only and addresses the statement no further.

United States District Court
Northern District of California

ERISA if they are (1) brought by "an individual, [who] at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and (2) under circumstances in which "there is no other independent legal duty that is implicated by a defendant's actions." *Id*. at 210. Both prongs of the *Davila* test must be satisfied for preemption to occur. *Marin Gen. Hosp. v. Modesto & Empire Traction Co*., 581 F.3d 941, 947 (9th Cir. 2009).

Here, the inquiry begins and ends with the first prong. NPF's claim to confirm the arbitration award under the CAA is not a colorable ERISA claim. *Trustees of Local Union 580 Employee Benefit Funds v. General Fence, Corp.*, 2014 WL 1800428, at *8 (E.D.N.Y. May 5, 2014) (state law petition to confirm arbitration award does not satisfy first *Davila* prong). A CAA claim for confirmation of an arbitration award is governed by California confirmation law, not by ERISA. *Id*. Because NPF's petition under the CAA cannot be construed as a claim that could have been brought under ERISA section 502(a), it is not preempted. *Id*.

## III.   STANDARD OF REVIEW

The role of the courts in reviewing arbitration awards is extremely circumscribed. *Southern Cal. Gas Co. v. Util. Workers Union of Am., Local 132, AFL-CIO*, 265 F.3d 787, 792 (9th Cir. 2001) (citing *Stead Motors v. Auto. Machinists Lodge*, 886 F.2d 1200, 1208 n. 8 (9th Cir. 1989) (en banc)). The confirmation of an arbitration award is meant to be a summary proceeding. *G.C. & K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir. 2003). Section 9 of the FAA provides that when presented with an application to confirm an arbitration award, the district court "must grant such an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. "'Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award.'" *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009) (quoting *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 994 (9th Cir. 2003)). Rather, grounds for vacating an award are limited to those specified by statute. *Hall St. Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 584 (2008) (holding Section 10 provides the FAA's exclusive grounds for vacatur of an arbitration award).

The FAA authorizes courts to vacate an award in limited circumstances, including:

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown … or of any other misbehavior by which the rights of any party have been prejudiced; or

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

With respect to the fourth ground, arbitrators exceed or fail to execute their powers sufficiently if the award constitutes a "manifest disregard of the law" or is "completely irrational." *Comedy Club, Inc. v. Improv West Associates*, 553 F.3d 1277, 1288 (9th Cir. 2009) (quoting *Poweragent, Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004)); 9 U.S.C. 10(a)(4). "'Manifest disregard of the law' means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law.  It must be clear from the record that the arbitrators [1] recognized the applicable law and then [2] ignored it." *Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995) (internal citations omitted).  "[T]o demonstrate manifest disregard, the moving party must show that the arbitrator 'underst[oo]d and correctly state[d] the law, but proceed[ed] to disregard the same.'"  *Bosack*, *supra* 586 F.3d at 1104 (quoting *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007)) (alterations in original).  To make this showing, the law alleged to have been ignored by the arbitrator "must be well defined, explicit, and clearly applicable." *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 838 (9th Cir. 2004) (quoting *Merrill Lynch v. Bobker*, 808 F.2d 930, 934 (2d Cir. 1986)).  An arbitrator cannot manifestly disregard the law where "no binding precedent existed" on the issue.  *Collins*, 505 F.3d at 883.

An award is completely irrational if it "fails to draw its essence from the agreement." *Comedy Club*, 553 F.3d at 1288 (quoting *Hoffman v. Cargill, Inc.*, 236 F.3d 458, 461-62 (8th Cir. 2001)).  "An arbitration award 'draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions.'" *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 642 (9th Cir. 2010) (quoting *Bosack*, *supra*, 586 F.3d at 1106.)  This standard is satisfied if the arbitrator is arguably interpreting the contract and that interpretation is "plausible." *See id.* at 643; *Sheet Metal Workers Int'l Ass'n v. Arizona Mechanical & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir. 1988) ("as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed a serious error does not suffice to overturn his decision") (quoting *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36

7

United States District Court
Northern District of California

1   (1987)). "Section 10(a)'s limited grounds are 'designed to preserve due process but not to permit

2   unnecessary public intrusion into private arbitration procedures.'" *U.S. Life Ins. Co. v. Superior Nat.*

3   *Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010) (quoting *Kyocera*, 341 F.3d at 998)). Ultimately, the

4   burden of establishing one of the enumerated grounds for vacatur rests with the party seeking to

5   vacate the award. *Id.*

6   **IV.   DISCUSSION**

7       Local 38 argues for vacatur on three grounds pursuant to Sections 10(a)(3) and (4), namely the

8   arbitrator's: (A) refusal to postpone the arbitration proceedings during the pendency of the Ninth

9   Circuit Appeal; (B) ruling on the choice of law issue about which Local 38 sought this Court's

10  judgment in the Related Case; and (C) conclusion that Local 38 was obligated to reciprocate PPA

11  contributions made on behalf of NPF travelers to NPF as "employer contributions" under the

12  Agreement. As set forth below, Local 38 failed to meet its burden on any of its proposed grounds to

13  vacate the Liability Award or the Damages Award.

14  **A.  Refusal to Stay Proceedings**

15      Local 38 argues that the arbitrator's denial of its request to impose an open-ended stay of the

16  arbitration pending adjudication of the Ninth Circuit Appeal constitutes misconduct under the

17  meaning on 9 U.S.C. section 10(a)(3).[4] While refusal to postpone a hearing upon a showing of

18  "sufficient cause" may constitute grounds for vacatur under 9 U.S.C. section 10(a)(3), such conditions

19  are not present here. As a threshold matter, Local 38's premise is unfounded. The arbitrator did not

20  "rewr[ite] the Parties' agreement to have a federal court decide the choice of law issue by informing

21  the Parties that he was 'dissolving his offer'" (Dkt. No. 1 at 22:17-18) to allow the declaratory

22  judgment action. This contention directly contravenes this Court's previous finding that no such

23  agreement ever existed between the parties. (Related Case, Dkt. Nos. 46, 54.) NPF expressly

24  declined Local 38's offer to consent to the filing of the declaratory relief action and immediately

25  sought to dismiss that action. Thus, the factual basis for Local 38's argument lacks substance.

26

27

28  _____

    [4] Local 38 additionally states that the arbitrator's refusing to stay the arbitration violated 9 U.S.C. section 10(a)(4), but cites no authority in support thereof.

1    Nor is the argument itself tenable.  Local 38 makes no attempt to demonstrate that the

2    arbitrator had no "reasonable basis" to deny the stay or that the denial amounts to a "denial of

3    fundamental fairness," as it must show to be entitled to vacatur.  *El Dorado School Dist. # 15 v.*

4    *Cont'l Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001); *Fordjour v. Washington Mut. Bank*, 2010 WL

5    2529093, at *5 (N.D.Cal. June 18, 2010).  The Court finds no grounds to conclude that the arbitrator's

6    decision to deny the stay had no reasonable basis when two federal courts – this Court and the Ninth

7    Circuit – made the same determination.  In fact, this Court found that entry of a stay would be

8    fundamentally unfair, and it would prejudice and likely harm NPF in pursuing its claims efficiently.

9    (Related Case, Dkt. No. 54.)  Accordingly, this basis for vacatur is **DENIED**.

10   **B.  Choice of Law**

11       Local 38 attacks the arbitrator's ruling on the choice of law issue by arguing that the ruling

12   itself exceeded the scope of his powers.[5]  *See* 9 U.S.C. § 10(a)(4).  Specifically, Local 38 contends

13   that his ruling that state contract law governed NPF's claims was outside the scope of his powers

14   because it was (1) not properly before him as the parties agreed to allow this Court to decide the issue,

15   (2) in "manifest disregard" of the law of ERISA, and (3) completely irrational as it was not derived

16   from the Agreement.  The Court addresses each of these arguments in turn.

17       *1.  The Choice of Law Issue Was Properly Before the Arbitrator*

18       First, Local 38 contends that the choice of law issue was not properly before the arbitrator

19   because the parties agreed to bring a declaratory action in federal court.  As discussed, *supra*, this

20   Court has explicitly rejected such a contention on multiple occasions.  Furthermore, the Court

21   dismissed the declaratory action on the basis that the arbitrator – and the arbitrator alone – possessed

22   the authority to decide the choice of law issue.  Thus, the choice of law issue was properly before the

23   arbitrator.  It can only be vacated upon a showing that his decision was in manifest disregard of the

---

26       [5] Local 38 also makes passing reference to misconduct with respect to the arbitrator's failure

27   to honor the parties' alleged agreement to resolve the choice of law dispute in federal court.  (Dkt. No.
     1 at 5:11-12.)  This basis for vacatur fails for at least two reasons.  First, for the reasons discussed in

28   Sections IV(A) and (B)(1), *infra*, the Court found that no such agreement existed.  Second, Local 38
     wholly fails to develop or support this misconduct argument under 9 U.S.C. section 10(a)(3).

United States District Court
Northern District of California

1   law or was completely irrational under 9 U.S.C. section 10(a)(4).  For the reasons discussed below,

2   Local 38 has demonstrated neither.

3          *2.   The Choice of Law Decision Did Not Manifestly Disregard ERISA*

4          With respect to manifest disregard, Local 38 contends that Ninth Circuit precedent compels

5   the application of ERISA, not state contract law, to NPF's claims.  In particular, Local 38 argues that

6   the arbitrator's decision that ERISA does not preempt the area is contrary to the Ninth Circuit's

7   decision in *IT Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415 (9th Cir. 1997).  However, a decision

8   "contrary to" binding precedent is not necessarily in "manifest disregard" thereof.  Local 38 does not

9   even attempt to address the standard of manifest disregard by showing first that the arbitrator

10  recognized the applicability of *IT Corp.*, and second, that he then ignored it.  *Michigan Mut.*, 44 F.3d

11  at 832.  This failure is unsurprising given the arbitrator did not address *IT Corp.* in his decision.  Local

12  38 is therefore left arguing that the arbitrator *incorrectly concluded* that "ordinary contract law and

13  interpretation principles would apply to the claim here."  (Baker Decl., Exh. 21.)  Reduced to its

14  essence, Local 38's argument is the arbitrator made an "erroneous legal conclusion" and nothing

15  more.  *Kyocera*, 341 F.3d at 994 ("Neither erroneous legal conclusions nor unsubstantiated factual

16  findings justify federal court review of an arbitral award…").  Local 38's effort to reframe legal error

17  into manifest disregard of the law does not persuade.  It simply cannot justify federal court

18  intervention in the arbitration award.

19         *3.   The Choice of Law Decision Was Not Irrational*

20         With respect to irrationality, Local 38 argues that the arbitrator's application of contract law to

21  the underlying dispute was completely irrational insofar as his decision was not derived from the

22  Agreement.  Again, Local 38's argument ignores the legal standard for showing that an arbitration

23  decision was completely irrational.  This argument, at most, goes toward the correctness of the

24  arbitrator's interpretation the Agreement.  "Under § 10(a)(4), the question for a judge is not whether

25  the arbitrator construed the parties' contract correctly, but whether he construed it at all."  *Oxford*

26  *Health Plans LLC v. Sutter*, 133 S.Ct. 2064, 2071 (2013).  To prevail, Local 38 would have to

27  establish the arbitrator was not even arguably interpreting the Agreement, but if he were, that his was

28  not a "plausible" interpretation thereof.  *Sheet Metal Workers*, 863 F.2d at 653.  The arbitrator

10

1  unquestionably construed the Agreement in making his choice of law determination.  Indeed, the

2  arbitrator specifically references Section 10 of the Agreement, the same portion on which Local 38

3  now relies to argue for a contrary result.  (*See* Baker Decl., Exh. 7; Dkt. No. 27 at 11-13.)

4      The only remaining inquiry is whether the arbitrator's interpretation that the Agreement does

5  not require ERISA to govern all disputes arising thereunder is plausible.  *Lagstein*, 607 F.3d at 645.

6  The Court finds that it is.  While the parties vigorously litigated this issue in front of the arbitrator,

7  they all agree only one provision of the Agreement, Section 10, even remotely applied to this topic.

8  Section 10 of the Agreement provides:

> The trustees of any signatory pension fund shall not be liable for any
> acts of the trustees of any other pension benefit trust fund signatory to
> this Agreement; nor shall any trustee be *personally* liable for any action
> taken pursuant to this Agreement except to the extent liability is
> imposed by operation of [ERISA] or applicable provisions of Canadian
> and provincial law.

(Baker Decl., Exh. 4) (emphasis supplied).  A plain reading of Section 10 shows that it only works to

protect trustees of one fund from liability for the acts of another fund, and also protects trustees from

*personal* liability unless ERISA imposes such personal liability.  It does not, as Local 38 argues,

require that any liability under the Agreement be imposed pursuant only to ERISA.  The Court finds

plausible the arbitrator's determination that "Section 10 of the Agreement referencing ERISA

concerning *personal* liability of Trustees [was] not implicated by NPF in its simple breach of contract

action."  (*Id.*) (emphasis supplied.)  Nor was the arbitrator's decision unreservedly wrong.  Rather, the

plain language suggests Section 10 is simply inapplicable to NPF's claims.  Therefore, the arbitrator

acted within the scope of his powers by finding that contract law, not ERISA law, applied.  The award

is not irrational within the meaning of the FAA.

    Accordingly, this basis for vacatur is **DENIED**.

**C.  PPA Contributions as "Employer Contributions" Under the Agreement**

    Local 38 next argues that the arbitrator exceeded the scope of his powers by determining that

PPA contributions must be reciprocated as "employer contributions" to NPF under the Agreement.

*See* 9 U.S.C. § 10(a)(4).  Local 38 attacks this determination as outside the scope of the arbitrator's

powers on three bases, specifically arguing that (1) NPF's demand for PPA contributions was not

11

United States District Court

Northern District of California

1   properly before the arbitrator because NPF did not exhaust required pre-arbitration remedies under the

2   Agreement, (2) the ruling is in manifest disregard of ERISA, and (3) the award of PPA contributions

3   is completely irrational as it is not drawn from and possibly ignores express terms of the Agreement.

4   The Court addresses each below.

5                    *1. PPA Contributions Were Properly Before the Arbitrator*

6           First, Local 38 contends that NPF's request for an award of more than $200,000 in PPA

7   contributions was not properly before the arbitrator because NPF failed to raise the issue prior to

8   arbitration, in violation of the Agreement's pre-arbitration procedures. Section 13 of the Agreement

9   requires disputing parties to attempt to resolve disputes amongst themselves in the first instance, then

10  with the help of a reciprocity coordinator, before submitting the dispute to an arbitrator. (Baker Decl.,

11  Exh. 4.) NPF does not contest the enforcement or applicability of Section 13. Rather, NPF argues

12  that its many demands for full reciprocation of 100 percent of employer contributions over seven

13  years included PPA contributions. In NPF's view, its failure to itemize PPA contributions explicitly

14  is of no consequence. The arbitrator agreed: "[t]here is no convincing showing that NPF forfeited or

15  forgave Local 38's full payment of its 100 percent reciprocity obligations under the Agreement,"

16  including PPA contributions. (Damages Award at 10.) Thus, Local 38 essentially asks the Court to

17  undo the arbitrator's factual finding that NPF satisfied the pre-arbitration procedures under the

18  Agreement. The Court cannot second-guess an arbitrator's factual finding and substitute its judgment

19  for that of the fact finder (the arbitrator). *Kyocera*, 341 F.3d at 994 ("unsubstantiated factual

20  findings" do not "justify federal court review of an arbitral award"). This basis for vacatur fails.

21                    *2. The Award of PPA Contributions Did Not Manifestly Disregard ERISA*

22          Second, Local 38 argues that the award of PPA contributions as employer contributions must

23  be vacated because it manifestly disregards the law of ERISA. Local 38's arguments on this point

24  merely constitute disagreement with the arbitrator's interpretation of ERISA, which is not sufficient

25  under the "manifest disregard" standard to vacate his award. *Bosack*, 586 F.3d at 1102; *Kyocera*, 341

26  F.3d at 994. To prevail, Local 38 must show that is clear from the record (1) that the arbitrator

27  recognized applicable law and then (2) ignored it. *Michigan Mut.*, 44 F.3d at 832. The law alleged to

28  have been ignored by the arbitrator "must be well defined, explicit, and clearly applicable." *Carter*,

United States District Court
Northern District of California

1    374 F.3d at 838.  By contrast, here, Local 38 provides a litany of objections to the arbitrator's

2    statutory *interpretation* and his application of that *interpretation* to the Agreement – not any refusal to

3    apply a clear statutory command.

4          Local 38 focuses heavily on ERISA section 305 ("Section 305")[6] in support of its argument

5    that the arbitrator manifestly disregarded the law.  Limited background on PPA contributions is

6    necessary to appreciate the issue.  Under the PPA, if a multi-employer defined benefit pension plan

7    (such as Local 38) becomes "endangered," the plan's trustees must propose to the plan's parties

8    options for a "funding improvement plan" ("FIP").  29 U.S.C. §§ 1085(b)(1), (c).  The PPA defines a

9    FIP as a "plan which consists of the actions, including options or a range of options to be proposed to

10   the bargaining parties, formulated to provide, based on reasonably anticipated experience and

11   reasonable actuarial assumptions, for the attainment by the plan" during the FIP period of certain

12   requirements.  *Id*. § 1085(c)(3)(A).  A plan's bargaining parties can opt to increase employer

13   contributions or decrease future benefits to attain the FIP, among other options.  *Id*.

14         Here, apparently Local 38 became endangered and its bargaining parties chose a FIP involving

15   increased employer contributions rather than decreased future benefits.  Thus, during the relevant time

16   period, employers of traveling employees working in Local 38's territory paid increased

17   contributions, *i.e.* the PPA contributions, to Local 38 pursuant to Local 38's FIP.  According to Local

18   38, Section 305 and the Agreement together entitle it to retain all PPA contributions and not

19   reciprocate PPA contributions to a traveler's home fund (including NPF).  In particular, Local 38

20   argues that Section 305(d) prohibits the use of PPA contributions for any purpose other than funding

21   purposes under Local 38's FIP, including for the benefit of travelers.

22         Local 38 has not pointed to any particular language in Section 305(d) that prohibits

23   reciprocation of PPA contributions under a reciprocity agreement.  While Section 305(d) generally

24   prohibits the use of PPA contributions to increase benefits (subject to certain exceptions) for members

25

26

27   _____

     [6] ERISA section 305 is also codified in the Internal Revenue Code section 432.  *See* 29 U.S.C.
28   § 1085 (Section 305); 26 U.S.C. § 432.

13

United States District Court
Northern District of California

1  of the endangered plan, *see* 29 U.S.C. § 1085(d)(1)(B),[7] it does not address the relevant issue: whether

2  such contributions should be reciprocated to a traveler's home fund under a reciprocity agreement.

3  The arbitrator recognized Local 38's reliance on Section 305(d), but found it inapplicable insofar as

4  this "is not a case where it would be seeking to use FIP employer contributions for other than FIP

5  funding purposes." (Damages Award at 9.)  Contrary to Local 38's suggestion, the arbitrator merely

6  disagreed that Section 305(d) mandated a different result.  He did not disregard or ignore Section

7  305(d).

8      Local 38 also contends that the arbitrator manifestly disregarded Section 305(b)(3)(B)(i).

9  (*See, e.g.*, Dkt. No. 27 at 17-18, n.10.)  The Court disagrees.  Section 305(b)(3)(B)(i) instructs plan

10  actuaries to consider demographic data of that plan's members to calculate a FIP – the exact

11  proposition for which the arbitrator cites that provision.  The arbitrator agreed with Local 38's

12  contention that its actuaries were not required to consider traveler demographics because travelers are

13  not eligible for Local 38 benefits.  (Damages Award at 9.)  Local 38's attempt to now turn this

14  statement on its head by positing that the arbitrator ruled "that Local 38's actuaries had to take

15  Traveler demographic data into account when calculating the Local 38's Pension Plan's [FIP]"

16  ignores a plain reading of his award.

17      Moreover, no binding Supreme Court or Ninth Circuit precedent was considered and ignored

18  by the arbitrator.  *Collins*, 505 F.3d at 883.  As the parties concede, only two district courts have

19  arguably addressed the question of whether PPA contributions are "employer contributions" as that

20  term is used in the Agreement.  *Bd. of Trustees of the Int'l Bhd. of Teamsters Local 863 Pension Fund

21  v. C&S Wholesale Grocers*, 5 F.Supp.3d 707 (D.N.J. 2014); *Lehman v. Nelson*, 2014 WL 4540160

22  (W.D.Wash. Sept. 11, 2014).  And, those decisions came to differing conclusions.  In *C&S

23  Wholesalers*, the court held that PPA surcharges should not be considered "contributions" to calculate

24  an employer's annual payments upon withdrawal from the plan.  *C&S Wholesalers*, 5 F.Supp.3d at

25

26      [7] Section 305(d)(1)(B) provides: "A plan may not be amended after the date of the adoption of
27  a [FIP] under subsection (c) so as to increase benefits, including future benefit accruals, unless the
    plan actuary certifies that such increase is paid for out of additional contributions not contemplated by
28  the [FIP], and, after taking into account the benefit increase, the multiemployer plan still is reasonably
    expected to meet the applicable benchmark on the schedule contemplated in the [FIP]."

United States District Court

Northern District of California

721-25.   On the other hand, the court in *Lehman* held that ERISA and the parties' reciprocity agreement – which the arbitrator found to be similar to the Agreement here – required full reciprocation of all contributions, including contributions the visiting fund sought to withhold under its FIP.  *Lehman*, 2014 WL 4540160 at *8-9.  In *Lehman*, the district court emphasized that a visited fund "merely acts as a conduit to the money transferred to the [home] fund," an argument which the arbitrator found compelling and adopted.  Ultimately, the arbitrator found *Lehman* more persuasive and applicable under the circumstances.  An arbitrator's reasoned decision to adopt the rationale of one non-binding decision over another cannot demonstrate a "manifest disregard of law," especially where neither party presents binding precedent on the issue.  Local 38's attempt to pigeon-hole *de novo* review into the exacting standard on review of an arbitration award does not persuade.

### 3.   The Award of PPA Contributions Was Not Irrational

Lastly, Local 38 asks this Court to vacate the Damages Award on the basis that the arbitrator's determination was not drawn from the Agreement.  Local 38 baldly asserts the arbitrator's determination that the term "employer contributions" encompasses PPA contributions under the Agreement "is, at best, irrational."  (Dkt. No. 1 at 15:13-14.)  On this point, again, Local 38 sidesteps the relevant standard, focusing instead on the underlying merits.  "[C]onvincing a court of an arbitrator's error – even his grave error – is not enough."  *Oxford Health*, 133 S.Ct. at 2070.  The Court may only vacate the award as irrational if the arbitrator was not "arguably construing" the Agreement.  *Id.*  Even a cursory review of the Damages Award shows that the arbitrator construed the Agreement in making his determination.  (*See* Damages Award at 5-7.)  Indeed, the arbitrator's decision heavily relies on his determination that Section 1(c) of the Agreement, defining "employer contributions," encompasses a broad enough definition to include PPA contributions:

> The terms of the Agreement, as quoted, are unambiguous and absolute: "[T]he full payment of 100% of the contributions which an employer makes to a signatory pension fund for the purpose of providing a plan of pension benefits for employees."  "Full payment of 100" percent means, by normal reading, all such contributions provided they are "for the purpose of providing a plan of pension benefits for employees."  For the purposes of the Agreement, all contributions, including PPA contributions, are for that purpose.

(Damages Award at 4-5.)   That Local 38 would interpret the term "employer contributions" as not including PPA contributions cannot compel vacatur of the arbitrator's decision.  The Court "need only find that the [arbitrator's] interpretation of the agreement was plausible." *Lagstein*, 607 F.3d at 645.  The Court finds that it was.  It is certainly plausible to conclude that the phrase "100% of the contributions" would include PPA contributions in this context.  Whether the Court "would find [the arbitrator's] arguments convincing were it up to [the Court] to interpret the contract is beside the point." *Oxford Health*, 133 S.Ct at . (quoting *Berklee Coll. of Music v. Berklee Chapter of the Mass. Fed'n of Teachers*, *Local 4412*, 858 F.2d 31, 34 (1st Cir. 1988)).

*** 

It bears repeating that the role of the courts in reviewing arbitration awards is extremely circumscribed.  This has been long settled, and oft repeated: "It is the arbitrator's construction [of the contract] which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Id.* at 2070-71 (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960)).

This basis for vacatur is likewise **DENIED**.

## V.   CONCLUSION

For these reasons, the petition to vacate the Damages Award is **DENIED**.  The Court likewise rejects all defenses against the petition to enforce the Liability Award.  The FAA and CAA require the Court grant an application to confirm an arbitration award "unless the award is vacated, modified, or corrected."  9 U.S.C. § 9; Cal.Code.Civ.P. § 1286.  The cross petition to confirm the Liability Award and Damages Award, therefore, is **GRANTED**.  The arbitration awards are **CONFIRMED**.

Judgment shall issue by separate order.  Defendant shall file a proposed form of judgment, approved as to form by plaintiff, within seven (7) days of the date of this Order.

This Order terminates Docket Numbers 1 and 17.

**IT IS SO ORDERED.**

Dated: January 21, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**